1  NEWMEYER & DILLION LLP
   J. NATHAN OWENS, CBN 198546
2  AMTOJ S. RANDHAWA, CBN 301360
   895 Dove St., Fifth Floor
3  Newport Beach, California 92660
   (949) 854-7000 / (949) 854-7099 (Fax)
4  Nathan.Owens@ndlf.com
   Amtoj.Randhawa@ndlf.com
5
   Attorneys for Plaintiff Creditor
6  STEPHEN CHEIKES, an individual; and
   THE STORYTELLERS GROUP
7  ENTERPRISES CO., a Canadian corporation

8             UNITED STATES BANKRUPTCY COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10

11 In re:                          CASE NO.: 17-01567-CL7
                                   JUDGE:    Hon. Christopher B.
12 RICHARD CHARLES                            Latham
   WLODARCZYK, III,
13                                 **ADVERSARY COMPLAINT FOR**
            Debtor.                **NONDISCHARGEABILITY OF**
14                                 **DEBT PURSUANT TO 11 U.S.C.**
                                   **§§§523(a) (2)(A), (a)(4) AND (a)(6);**
15                                 **AND OBJECTION TO**
                                   **DISCHARGE PURSUANT TO 11**
16                                 **U.S.C. §§727(a)(4)(A) AND**
                                   **727(a)(5)**
17

18 STEPHEN CHEIKES, an individual;
   and THE STORYTELLERS GROUP
19 ENTERPRISES CO., a Canadian
   corporation;
20
            Plaintiffs,
21

22      v.

23 RICHARD CHARLES
   WLODARCZYK,III,
24
            Defendant.
25

26

27      Plaintiffs, STEPHEN CHEIKES and THE STORYTELLERS GROUP

28 ENTERPRISE CO., a Canadian corporation (collectively referred to as

"Plaintiffs"), by and through their counsel of record, the law firm of Newmeyer & Dillion LLP, file this Complaint under 11 U.S.C. §§§§523(a)(2)(A), (a)(4), (a)(6); and 727(a)(4)(A) and (a)(5), objecting to the dischargeability of a pre-petition debt owed by Defendant RICHARD CHARLES WLODARCZYK, III, the debtor herein, to Plaintiffs, and in support hereof alleges as follows:

## JURISDICTION AND VENUE

1.     Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§157 and 1334, and 11 U.S.C. § 523.

2.     Venue in the Southern District of California is proper under 28 U.S.C. § 1391(b) and (c).

3.     This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(1).

4.     This Adversary Proceeding related to *In re Richard Charles Wlodarczyk, III,* Case No. 17-01567-CL7 (Bankr. S.D. Cal.)(Chapter7), now pending in this Court ("Bankruptcy Case"). Plaintiffs are unsecured creditors with a claim against the Debtor in the amount of TWO HUNDRED THOUSAND DOLLARS ($200,000.00) pursuant to the Judgment entered by the Orange County Superior Court of California in favor of Plaintiffs and against Debtor and Debtor's limited liability company, Creative Financial Resources, LLC, jointly and severally ("Judgment"), in the case styled *The Storytellers Group Enterprises Co. et al. v. Shaman Bakshi et al*., Case No. 30-2013-00637770-CU-BC-CJC ("State Court Case").

## THE PARTIES

5.     Plaintiff Stephen Cheikes ("Cheikes") is an individual that now resides in Victoria, British Columbia, Canada.

6.     Plaintiff The Storytellers Group Enterprises Co. ("TSGE") is, and at all times relevant hereto was, a Canadian corporation with its principal place of business located in British Columbia, Canada.

ADVERSARY COMPLAINT FOR
NONDISCHARGEABILITY OF DEBT

NEWMEYER & DILLION LLP

7.      Plaintiffs are informed and believe that Defendant Richard Charles Wlodarczyk, III ("Debtor") whom at all times relevant hereto was, and currently is, a resident of San Diego, California.

### COMMON ALLEGATIONS

8.      In or about October 2010, Plaintiffs were introduced to an individual named Shaman Bakshi ("Bakshi"). Thereafter, Bakshi began soliciting Plaintiffs to participate in a financing opportunity that involved the issuance of a Standby Letter of Credit ("SBLC"). Plaintiffs were asked to place monies into escrow that would be used to finance the processing costs for the issuance of a SBLC in a substantially larger amount. The SBLC would be cash-backed by another party (Sabastian Anthonysamy) with whom Bakshi represented as having a substantial ongoing financial relationship with a major banking institution (HSBC UK Bank).

9.      The SBLC would be issued by HSBC to North American Conveyor Corporation (NACC), which Bakshi represented held, at that time, several existing substantial lines of credit with HSBC. Upon the issuance of the SBLC, NACC would immediately draw down on one of its then existing lines of credit and distribute monies back to Plaintiffs in the form of a non-recourse loan in consideration for the initial monies put into escrow. The entire transaction was to take no more than three weeks to complete.

10.     As part of Plaintiffs' due diligence on the proposed transaction, Bakshi introduced Plaintiffs to Debtor. Debtor represented himself to be a principal in this transaction. Debtor also represented that he had previously successfully completed several of these transactions with other investors and that the issuance by HSBC of the SBLC, cash-backed by Mr. Anthonysamy, was assured.

11.     Plaintiffs were also introduced to Toni Hardstone, principal of Commercial Escrow Services, Inc. ("CES"), whom was represented to be the escrow company that would hold the escrowed monies until the SBLC was issued. Representations were made to Plaintiffs that Debtor had substantial business

- 3 -

ADVERSARY COMPLAINT FOR
NONDISCHARGEABILITY OF DEBT

dealings with Ms. Hardstone and CES on similarly described transactions and that all said transactions had been successfully handled without any problems.

12.    To further entice Plaintiffs to invest in the financing scheme, Debtor executed personal and corporate guarantees, on behalf of himself and his limited liability company, Creative Financial Resources, LLC ("CFR"), respectively, for the full refund of the monies placed in escrow in the event that, for any reason, the SBLC was not issued.  Debtor also provided Plaintiffs with written agreements outlining and providing for each step of the transaction.

13.    Relying on the above representations, final agreements to memorialize the proposed financial transaction were negotiated between Plaintiffs and Debtor.

14.    On or about March 1, 2011, in accordance with the terms of the agreements between the parties, Plaintiffs wire transferred €300,000 to CES to be held in escrow.  The escrowed monies were subsequently released even though the SBLC never issued.

15.    Debtor misrepresented his involvement in the transaction, his past involvement in other such transactions, and the overall efficacy of the proposed transaction.  Moreover, Debtor and Bakshi were working in concert with others to defraud Plaintiff out of the €300,000 deposited into escrow with CES.

16.    Plaintiffs are informed and believe and on that basis allege that after the monies were removed from the CES escrow even though the SBLC had not issued, Debtor continued to actively conceal from Plaintiffs the true facts and misrepresent that the transaction would still be completed.

17.    Plaintiffs are informed and believe and on that basis allege that Debtor received some of the monies removed from the CES escrow despite knowing that the SBLC was not issued and not being entitled to any of the escrowed monies pursuant to the parties' agreement.

/ / /

/ / /

NEWMEYER & DILLION LLP

6915155.1

- 4 -

ADVERSARY COMPLAINT FOR
NONDISCHARGEABILITY OF DEBT

18.     When it was clear the SBLC would not issue, Plaintiffs demanded that Debtor refund the €300,000 deposited into escrow pursuant to the personal and corporate guarantees.

19.     Debtor failed and refused to refund the escrowed monies or the monies that he personally received.

## COURSE OF PROCEEDINGS

20.     Plaintiffs repeat, reallege, and incorporate by this reference each and every allegation in the preceding paragraphs of this Complaint as though fully set forth herein.

21.     As a result of Debtor's conduct, Plaintiffs filed a complaint against Debtor, Bakshi, and their respective limited liabilities companies on March 15, 2013 in the State Court Case.[1]

22.     Knowing that Plaintiffs would prevail on their Complaint against Debtor, Debtor wished to resolve the matter before trial.

23.     Thus, on October 3, 2014, Debtor and Plaintiffs entered into a Stipulation For Judgment Against Rik Wlodarczyk and Creative and a Settlement Agreement ("Stipulation").[2]

24.     Pursuant to the Stipulation, Debtor agreed that: 1) Plaintiffs deposited €300,000 into an escrow account to be held until the SBLC was issued; 2) the SBLC never issued, but Debtor withdrew and/or received €100,000; 3) Plaintiffs pursued Debtor for a refund of the €300,000 they deposited and to enforce personal and corporate guarantees executed by Debtor and CFR; and 4) Debtor refused to return the monies to Plaintiffs. (Ex. B, Section 3.)

25.     Debtor further agreed to make payments pursuant to a schedule set forth in the Stipulation. (Ex. B.)

---

[1] A true and correct copy of the complaint in the State Court Case is attached hereto as Exhibit A ("Ex. A").
[2] A true and correct copy of the Stipulation For Judgment Against Rik Wlodarczyk and Creative Financial Resources, LLC is attached hereto as Exhibit B ("Ex. B").

ADVERSARY COMPLAINT FOR
NONDISCHARGEABILITY OF DEBT

NEWMEYER & DILLION LLP

26.     Because Debtor admitted to his fraudulent activity, Debtor also agreed that the

> Stipulated Judgment is a compromise on the breach of contract (guarantee), conversion and fraud claims filed by Plaintiffs and it is **expressly agreed by the Defendants that his Stipulated Judgement is not dischargeable pursuant to 11 U.S. Code §523 should either of the Defendants file for bankruptcy protection under any section of Title 11 of the United States Code**.

(Ex. B, 3:25-28; 4:1)(emphasis added).

27.     Debtor did not make payments pursuant to the schedule set forth in the Stipulation and therefore breached the settlement agreement. Thus, Plaintiffs had no choice but to ask the Court to enter a judgment against Debtor and CFR.

28.     On December 13, 2014, a judgment in the amount of two hundred thousand dollars ($200,000.00) in favor of Plaintiff and against Debtor and CFR, jointly and severally, was entered in the State Court Case.

29.     After the Judgment was entered, Debtor failed and refused to pay his debts as they came due. Despite requesting and negotiating multiple extensions and payment arrangements with Plaintiffs, Debtor failed to make payments on the Judgment as they came due.

30.     After exhausting all state court remedies, and Debtor's continued failures and reluctance to pay Plaintiffs the Judgment, Plaintiffs filed an involuntary petition for bankruptcy against Debtor in this Court on December 18, 2016 in the case styled *In re Rik Wlodarczyk,* Case No. 16-06326-CL7 (Bankr. S.D. Cal.)(Chapter7) ("Involuntary Case").

31.     At a December 19, 2016 status conference in the Involuntary Case, Debtor represented that he was paying debts as they came due, and Plaintiffs therefore could not satisfy all of the requirements of 11 U.S.C. §303 (i.e. proving that Debtor was not paying debts as they came due). In light of Debtor's representation, this Court dismissed the Involuntary Case on December 19, 2016.

///

ADVERSARY COMPLAINT FOR
NONDISCHARGEABILITY OF DEBT

NEWMEYER & DILLION LLP

32.     On March 22, 2017, Debtor filed the current Bankruptcy Case.

33.     On April 20, 2017, a meeting of the creditors was held in the Bankruptcy Case. At the meeting, counsel for Plaintiffs inquired on Debtor's assets, liabilities, and reasons for filing bankruptcy. Debtor did not provide any tax returns before the meeting, and the schedules submitted provided no information regarding Debtor's assets, value, or location of same. Moreover, Debtor represented that he filed the Bankruptcy Case due to his "inability to pay business debts" (i.e. the Judgment). This representation was made under oath and directly contradicted Debtor's representation in the Involuntary Case (i.e. that Debtor was paying his debts as they came due).

## FIRST CLAIM FOR RELIEF

### (Nondischargeability against Debtor Pursuant to 11 U.S.C. §523(a)(2)(A))

34.     Plaintiffs repeat, reallege, and incorporate by this reference each and every allegation in the preceding paragraphs of this Complaint as though fully set forth herein.

35.     Debts for money, property, or services obtained by false pretenses, a false representation, or actual fraud are not dischargeable. 11 U.S.C. § 523(a)(2)(A).

36.     The allegations set forth in this Complaint and the Stipulation make clear Debtor defrauded Plaintiffs by knowingly making false, material misrepresentations to Plaintiffs in furtherance of his attempt to defraud Plaintiffs of €300,000 and convert same for his own, personal use.

37.     Debtor agreed that: 1) Debtor solicited Plaintiffs to participate in the financing opportunity that involved the issuance of the SBLC; 2) Plaintiffs deposited €300,000 into an escrow account to be held until the SBLC was issued at Debtor's request and pursuant to Debtor's representations; 3) the SBLC never issued, but Debtor withdrew and/or received €100,000; 4) Plaintiffs pursued Debtor for a refund of the €300,000 they deposited and to enforce personal and

corporate guarantees executed by Debtor and CFR; and 5) Debtor refused to return the monies to Plaintiffs. (Ex. B, Section 3.)

38.    Debtor further agreed that the

Stipulated Judgment is a compromise on the breach of contract (guarantee), conversion and fraud claims filed by Plaintiffs and it is **expressly agreed by the Defendants that his Stipulated Judgement is not dischargeable pursuant to 11 U.S. Code §523 should either of the Defendants file for bankruptcy protection under any section of Title 11 of the United States Code**.

(Ex. B, 3:25-28; 4:1)(emphasis added).

39.    The Debtor's activities described in this Complaint were conducted with knowledge of the falsity of the representations made, knowledge of the fraudulent scheme described herein, reckless disregard of the truth or falsity of the representations, and willful intention to harm Plaintiffs.

40.    The Debtor's activities described in this Complaint constitute false representations or actual fraud as evidenced in the Stipulation.

41.    Consequently, Debtor's debt to Plaintiff pursuant to the Judgment is one for money, property, or services obtained by false representations or actual fraud, and is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## SECOND CLAIM FOR RELIEF

**(Nondischargeability against Debtor Pursuant to 11 U.S.C. §523(a)(4))**

42.    Plaintiffs repeat, reallege, and incorporate by this reference each and every allegation in the preceding paragraphs of this Complaint as though fully set forth herein.

43.    Debts for money obtained by fraud or defalcation while acting in in a fiduciary capacity, embezzlement, or larceny are not dischargeable. 11 U.S.C. § 523(a)(4).

44.    The allegations set forth in this Complaint, and Debtor's agreement and execution of the Stipulation, make clear that Debtor was acting as a fiduciary in the transaction and owed a fiduciary duty to Plaintiffs.

NEWMEYER & DILLION LLP

45.     Debtor breached this fiduciary duty when Debtor defrauded Plaintiffs, convinced Plaintiffs to invest €300,000, made material misrepresentations and false promises, and converted Plaintiffs' monies for his own personal use.

46.     In the Stipulation, Debtor agreed that: 1) Debtor solicited Plaintiffs to participate in the financing opportunity that involved the issuance of the SBLC; 2) Plaintiffs deposited €300,000 into an escrow account to be held until the SBLC was issued at Debtor's request and pursuant to Debtor's representations; 3) the SBLC never issued, but Debtor withdrew and/or received €100,000; 4) Plaintiffs pursued Debtor for a refund of the €300,000 they deposited and to enforce personal and corporate guarantees executed by Debtor and CFR; and 5) Debtor refused to return the monies to Plaintiffs. (Ex. B, Section 3.)

47.     Because Debtor admitted his fraudulent activity, Debtor further agreed that the

> Stipulated Judgment is a compromise on the breach of contract (guarantee), conversion and fraud claims filed by Plaintiffs and it is **expressly agreed by the Defendants that his Stipulated Judgement is not dischargeable pursuant to 11 U.S. Code §523 should either of the Defendants file for bankruptcy protection under any section of Title 11 of the United States Code**.

(Ex. B, 3:25-28; 4:1)(emphasis added).

48.     Consequently, Debtor's debt is also one for money obtained by fraud or defalcation while acting in in a fiduciary capacity, embezzlement, or larceny, and is not dischargeable pursuant to 11 U.S.C. § 523(a)(4).

## THIRD CLAIM FOR RELIEF

### (Nondischargeability against Debtor Pursuant to 11 U.S.C. §523(a)(6))

49.     Plaintiffs repeat, reallege, and incorporate by this reference each and every allegation in the preceding paragraphs of this Complaint as though fully set forth herein.

/ / /

/ / /

NEWMEYER & DILLION LLP

6915155.1

- 9 -

ADVERSARY COMPLAINT FOR
NONDISCHARGEABILITY OF DEBT

50.     Debts for money obtained through the willful and malicious injury by the debtor to another entity or to the property of another entity are not dischargeable. 11 U.S.C. § 523(a)(6).

51.     Debtor willfully and maliciously injured Plaintiffs by knowingly making false representations and promises to convince Plaintiffs to investment monies Debtor knew he would convert for his personal use. These representations were material to Plaintiff's decision to contract with Debtor and invest €300,000 pursuant to the parties' agreement.

52.     In the Stipulation, Debtor agreed that: 1) Debtor solicited Plaintiffs to participate in the financing opportunity that involved the issuance of the SBLC; 2) Plaintiffs deposited €300,000 into an escrow account to be held until the SBLC was issued at Debtor's request and pursuant to Debtor's representations; 3) the SBLC never issued, but Debtor withdrew and/or received €100,000; 4) Plaintiffs pursued Debtor for a refund of the €300,000 they deposited and to enforce personal and corporate guarantees executed by Debtor and CFR; and 5) Debtor refused to return the monies to Plaintiffs. (Ex. B, Section 3.)

53.     Debtor further agreed that the

> Stipulated Judgment is a compromise on the breach of contract (guarantee), conversion and fraud claims filed by Plaintiffs and it is **expressly agreed by the Defendants that his Stipulated Judgement is not dischargeable pursuant to 11 U.S. Code §523 should either of the Defendants file for bankruptcy protection under any section of Title 11 of the United States Code**.

(Ex. B, 3:25-28; 4:1)(emphasis added).

54.     The Debtor's activities described in this Complaint were conducted with knowledge of the falsity of the representations made, knowledge of the fraudulent scheme described herein, reckless disregard of the truth or falsity of the representations, and willful intention to harm Plaintiffs.

/ / /

/ / /

ADVERSARY COMPLAINT FOR
NONDISCHARGEABILITY OF DEBT

NEWMEYER & DILLION LLP

55.    Debtor willfully and maliciously injured Plaintiff by refusing to repay Plaintiffs the money that had been obtained through Debtor's deception and fraud.

56.    Consequently, Debtor's debt is one for money obtained through the willful and malicious injury by the debtor to another entity or to the property of another entity and is not dischargeable pursuant to 11 U.S.C. § 523(a)(6).

## FOURTH CLAIM FOR RELIEF

**(Nondischargeability against Debtor Pursuant to 11 U.S.C. § 727(a)(4)(A))**

57.    Plaintiffs repeat, reallege, and incorporate by this reference each and every allegation in the preceding paragraphs of this Complaint as though fully set forth herein.

58.    Debts cannot be discharged when a debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account. 11 U.S.C. § 727(a)(4)(A)

59.    After filing the Bankruptcy Case, Debtor filed a notice of related cases listing the Involuntary Case as a case related to the Bankruptcy Case. As such the Bankruptcy Case and the Involuntary case are related and connected.

60.    At the December 19, 2016 status conference in the Involuntary Case, Debtor knowingly and fraudulently made a misrepresentation to this Court by stating that he was timely paying his debts, including the Judgment, as they came due. Based upon this representation, the Court dismissed Plaintiffs Involuntary Case against Debtor.

61.    At the April 20, 2017 meeting of the creditors in the Bankruptcy Case, Debtor knowingly and fraudulently made a misrepresentation under oath when he testified that he filed a voluntary petition for bankruptcy due to his inability to pay business debt and the Judgment.

62.    Debtor represented to this Court that he could pay, and was timely paying the Judgment (i.e. debts as they come due) in the Involuntary Case; however, Debtor testified, under oath, that he initiated the Bankruptcy Case

NEWMEYER & DILLION LLP

because of his inability to pay the Judgment. These contradictory statements were willfully, knowingly, and consciously made by Debtor to this Court and the trustee in the Bankruptcy Case.

63.    Thus, Debtor represented one thing to this Court, and testified to another under oath.

64.    Consequently, Debtor's debt is not dischargeable pursuant to 11 U.S.C. § 727(a)(4)(A).

### FIFTH CLAIM FOR RELIEF

**(Nondischargeability against Debtor Pursuant to 11 U.S.C. § 727(a)(5))**

65.    Plaintiffs repeat, reallege, and incorporate by this reference each and every allegation in the preceding paragraphs of this Complaint as though fully set forth herein.

66.    Debts cannot be discharged when a debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities. 11 U.S.C. §727(a)(5).

67.    At the April 20, 2017 meeting of the creditors in the Bankruptcy Case, Plaintiffs questioned Debtor as to the description, location, and value of his assets.

68.    Debtor did not provide any meaningful information and referred Plaintiffs to the schedules that had been filed in the Bankruptcy Case—none of which provided any meaningful information.

69.    Additionally, Debtor failed to timely file any tax returns and further deprived Plaintiffs of any explanation or meaningful information regarding assets or liabilities.

70.    Debtor has failed to explain any loss of assets, the location of the monies deposited by Plaintiffs, the disposition of the monies deposited by Plaintiffs, or the facts and circumstances surrounding Debtor's inability to pay debts as they come due.

ADVERSARY COMPLAINT FOR
NONDISCHARGEABILITY OF DEBT

NEWMEYER & DILLION LLP

71.    Consequently, Debtor's debt is not dischargeable pursuant to 11 U.S.C. § 727(a)(5).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests judgment against Debtor as follows:

1.    Judgment against Debtor determining that the Judgment in favor of Plaintiffs and against Debtor and CFR, jointly and severally, entered by the Orange County Superior Court of California, in the cast styled *The Storytellers Group Enterprises Co. et al. v. Shaman Bakshi et al*., Case No. 30-2013-00637770-CU-BC-CJC, is not dischargeable in the instant Bankruptcy Case and for judgment according to proof;

2.    Plaintiffs be awarded their costs of suit incurred herein; and

3.    Plaintiffs be awarded any other and further relief this Court deems proper.

Dated: June 16, 2017                           NEWMEYER & DILLION LLP


By: */s/ Amtoj S. Randhawa*
J. Nathan Owens
Amtoj S. Randhawa
Attorneys for Petitioner
STEPHEN CHEIKES

ADVERSARY COMPLAINT FOR
NONDISCHARGEABILITY OF DEBT

NEWMEYER & DILLION LLP

# Exhibit A

1  NEWMEYER & DILLION LLP
   J. NATHAN OWENS, CBN 198546
2  Nathan.owens@ndlf.com
   895 Dove Street, 5th Floor
3  Newport Beach, California 92660
   (949) 854-7000; (949) 854-7099 (Fax)
4
   Attorneys for Plaintiffs
5  THE STORYTELLERS GROUP ENTERPRISES
   CO. and STEPHEN CHEIKES
6

7

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange
**03/15/2013** at 02:22:58 PM
Clerk of the Superior Court
, By Michael Porter,Deputy Clerk

8              SUPERIOR COURT OF CALIFORNIA

9                   COUNTY OF ORANGE

10

11  THE STORYTELLERS GROUP
    ENTERPRISES CO., a Canadian
12  corporation; and
    STEPHEN CHEIKES, an individual;
13
                Plaintiffs,
14
    vs.
15
    SHAMAN BAKSHI, an individual;
16  FADE TO BLACK ENTERTAINMENT,
    LLC, a California limited liability
17  company;
    RIK WLODARCZYK, an individual;
18  CREATIVE FINANCIAL RESOURCES,
    LLC, a California limited liability
19  company; and
    DOES 1 through 20, inclusive;
20
                Defendants.
21

CASE NO.:    30-2013-00637770-CU-BC-CJC

**COMPLAINT FOR:**

1.  **BREACH OF CONTRACT**
2.  **CONVERSION**
3.  **FRAUD**
4.  **NEGLIGENCE**

**DEMAND FOR JURY TRIAL**

Judge William M. Monroe

22       Plaintiffs Stephen Cheikes and The Storytellers Group Enterprises Co. (collectively

23  "Plaintiffs") for causes of action against the above named defendants, and each of them, with

24  knowledge as to themselves and otherwise on information and belief, claim and allege as follows:

25                          **COMMON ALLEGATIONS**

26       1.    Plaintiff The Storytellers Group Enterprises ("TSGE") is, and at all times relevant

27  hereto was, a Canadian corporation with its principal place of business located in British

28  Columbia, Canada.

3587966.1

NEWMEYER & DILLION LLP

2.    Plaintiff Stephen Cheikes ("CHEIKES") is an individual that resides in the state of Hawaii.

3.    Plaintiffs are informed and believe and on that basis allege that Defendant Shaman Bakshi is an individual whom at all times relevant hereto was a resident of Fullerton, California ("BAKSHI").

4.    Plaintiffs are informed and believe and on that basis allege that Defendant Fade to Black Entertainment, LLC ("FBE"), is and at all times mentioned herein was a California limited liability company doing business in Fullerton, California.

5.    Plaintiffs are informed and believe and on that basis allege that Defendant RIK WLODARCZYK is an individual whom at all times relevant hereto was a resident of San Diego, California ("WLODARCZYK").

6.    Plaintiffs are informed and believe and on that basis allege that Defendant Creative Financial Resources, LLC ("CFR"), is and at all times mentioned herein was a California limited liability company doing business in San Diego, California.

7.    The true names and capacities, whether corporate, associate, individual or otherwise, of Defendants DOES 1 through 20, inclusive, are unknown to Plaintiffs at this time, who therefore sues said Defendants pursuant to California Code of Civil Procedure Section 474. Plaintiffs will, with leave of court, amend this Complaint to show the true names and capacities of DOES 1 through 30, inclusive, when the same have been ascertained.  Plaintiffs are informed and believe, and upon that basis allege, that each of these fictitiously named Defendants are legally responsible in some manner for the events and occurrences herein alleged and that Plaintiffs' damages as alleged herein were proximately caused thereby.  (Defendants BAKSHI, FBE, WLODARCZYK, CFR, and DOES 1 through 20, inclusive, are referred to collectively as "Defendants.")

8.    Plaintiffs are informed and believe and on that basis allege that the Defendants herein named, and each of them, were at all times relevant hereto the agents, representatives, servants, partners, employees and/or alter egos of each of the other Defendants with respect to the matters and events alleged herein, and were acting within the course, scope and authority of

NEWMEYER & DILLION LLP

3587966.1

- 2 -

COMPLAINT

such agency, partnership, employment, representative and/or alter ego relationship in doing the things herein alleged with the permission, consent, authorization and/or ratification of their co-Defendants, and each of them.

9.    In or about October 2010, CHEIKES, a principal of TSGE, was introduced to BAKSHI.  Thereafter, BAKSHI began soliciting CHEIKES to participate in a financing opportunity that involved the issuance of a Standby Letter of Credit ("SBLC").  CHEIKES was asked to place monies into escrow that would be used to finance the processing costs for the issuance of a SBLC in a substantially larger amount.  The SBLC would be cash-backed by another party (Sabastian Anthonysamy) with whom BAKSHI represented as having a substantial ongoing financial relationship with a major banking institution (HSBC UK Bank).

10.    The SBLC would be issued by HSBC to North American Conveyor Corporation (NACC), which BAKSHI represented held, at that time, several existing substantial lines of credit with HSBC.  Upon the issuance of the SBLC, NACC would immediately draw down on one of its then existing lines of credit and distribute monies back to Plaintiffs in the form of a non-recourse loan in consideration for the initial monies put into escrow.  The entire transaction was to take no more than three weeks to complete.

11.    As part of CHEIKES' due diligence on the proposed transaction, BAKSHI introduced CHEIKES to WLODARCZYK.  WLODARCZYK represented himself to be a principal in this transaction.  WLODARCZYK also represented that he had previously successfully completed several of these transactions with other investors and that the issuance by HSBC of the SBLC, cash-backed by Mr. Anthonysamy, was assured.

12.    CHEIKES was also introduced to Toni Hardstone, principal of Commercial Escrow Services, Inc. ("CES"), whom was represented to be the escrow company that would hold the escrowed monies until the SBLC was issued.  Representations were made to CHEIKES that BAKSHI and WLODARCZYK had substantial business dealings with Ms. Hardstone and CES on similarly described transactions and that all said transactions had been successfully handled without any problems.

///

3587966.1

13.     To further entice CHEIKES to invest in the financing scheme, BAKSHI and WLODARCZYK each executed personal and corporate guarantees, on behalf of FBE and CFR, respectively, for the full refund of the monies placed in escrow in the event that, for any reason, the SBLC was not issued.  BAKSHI and WLODARCZYK also provided CHEIKES with written agreements outlining and providing for each step of the transaction.

14.     Relying on the above representations, final agreements to memorialize the proposed financial transaction were negotiated by and between Plaintiffs, on the one hand, and BAKSHI and WLODARCZYK, on the other hand.

15.     On or about March 1, 2011, in accordance with the terms of the agreements between the parties, Plaintiffs wire transferred €300,000 to CES to be held in escrow.  The escrowed monies were subsequently released even though the SBLC never issued.

16.     Plaintiffs are informed and believe and on that basis allege that BAKSHI and WLODARCZYK misrepresented their involvement in the transaction, their past involvement in other such transactions, and the overall efficacy of the proposed transaction.  Plaintiffs are further informed and believe and on that basis allege that BAKSHI and WLODARCZYK were working in concert with others to defraud Plaintiffs out of the €300,000 deposited into escrow with CES.

17.     Plaintiffs are informed and believe and on that basis allege that after the monies were removed from the CES escrow even though the SBLC had not issued, BAKSHI and WLODARCZYK both continued to actively conceal from Plaintiffs the true facts and misrepresent that the transaction would still be completed.

18.     Plaintiffs are informed and believe and on that basis allege that BAKSHI and WLODARCZYK both received some of the monies removed from the CES escrow despite knowing that the SBLC was not issued and not being entitled to any of the escrowed monies pursuant to the parties' agreement.

19.     When it was clear the SBLC would not issue, Plaintiffs demanded that BAKSHI and WLODARCZYK refund the €300,000 deposited into escrow pursuant to the personal and corporate guarantees.

20.    BAKSHI and WLODARCZYK failed and refused to refund the escrowed monies.

## FIRST CAUSE OF ACTION

### Breach of Contract

(Against Defendants and DOES 1 through 5, inclusive)

21.    Plaintiffs repeat, reallege and incorporate by this reference each and every allegation set forth in Paragraphs 1 through 20, inclusive, of this Complaint as though set forth in full herein.

22.    On or about March 1, 2010, Plaintiffs, entered into an agreement to finance the processing costs for the issuance of a SBLC.  As part of that agreement, BAKSHI and WLODARCZYK each executed personal and corporate guarantees, on behalf of FBE and CFR, that Plaintiffs' money put into escrow as part of the agreement would be refunded by BAKSHI and WLODARCZYK if the SBLC was not issued.  True and correct copies of the guarantees are attached hereto as Exhibits A and B.

23.    The SBLC never issued and Plaintiffs demanded return of the monies placed into escrow.  The escrowed monies have never been returned to Plaintiffs.

24.    Plaintiffs performed all conditions, covenants and promises required on their part to be performed in accordance with the terms and conditions of the agreements and the personal and corporate guarantees.

25.    Plaintiffs have made demand for return of the escrowed monies but BAKSHI and WLODARCZYK have failed and refused to honor the personal guarantees.  FBE and CFR have also failed and refused to honor the corporate guarantees.

26.    BAKSHI, WLODARCZYK, FBE and CFR have all breached the guarantees by failing to refund Plaintiffs the €300,000 deposited into the escrow account.

27.    As a result of Defendants BAKSHI, WLODARCZYK, FBE and CFR's breach of the guarantee, Plaintiffs has been damaged in an amount that can be proven at trial, but which in any event is not less than $410,000.

28.    Since the time of Defendants' breach of the guarantees regarding return of the escrowed monies, Plaintiffs have expended considerable time and resources in pursuit of the

3587966.1

- 5 -

NEWMEYER & DILLION LLP

1    escrowed monies, in an amount that can be proven at trial, but which in any event is not less than

2    $100,000.

### SECOND CAUSE OF ACTION

#### Conversion

(Against All Defendants and DOES 6 through 10, inclusive)

6         29.    Plaintiffs repeat, reallege, and incorporate by this reference each and every

7    allegation set forth in paragraphs 1 through 28, inclusive, of this Complaint as though set forth in

8    full herein.

9         30.    On or about March 1, 2011, in accordance with the terms of the agreements

10    between the parties, Plaintiffs wire transferred €300,000 to CES to be held in escrow.  Pursuant

11    to the terms of the agreement, BAKSHI and WLODARCZYK were to be paid monies out of a

12    non-recourse loan that would be made to Plaintiffs after the SBLC issued.  The SBLC never

13    issued.

14         31.    Plaintiffs are informed and believe and on that basis allege that even after the

15    SBLC did not issue, and despite not being entitled to any of the monies placed in the CES

16    escrow account, BAKSHI and WLODARCZYK both received some of the monies removed

17    from the escrow account.

18         32.    Plaintiffs are informed and believe and on that basis allege that after the monies

19    were removed from the CES escrow and improperly transferred to BAKSHI and

20    WLODARCZYK, both of them continued to actively conceal from Plaintiffs the true facts and

21    misrepresent that the transaction would still be completed.

22         33.    As a proximate result of Defendants' conversion, Plaintiffs was damaged in an

23    unknown amount, to be proved at the time of trial, but not less than the jurisdictional minimum

24    of this court.

25         34.    Since the time of Defendants' conversion of the above-referenced property for

26    their own use, Plaintiffs expended considerable time and resources in pursuit of the converted

27    property, in an amount that can be proven at trial.

28    ///

3587966.1

- 6 -

COMPLAINT

NEWMEYER & DILLION LLP

35.    Defendants' acts alleged above were willful, wanton, malicious, and oppressive, were undertaken with the intent to defraud, and justify the awarding of exemplary and punitive damages.

### THIRD CAUSE OF ACTION

### Fraud

(Against all Defendants and DOES 11 through 15, inclusive)

36.    Plaintiffs repeat, reallege and incorporate by this reference each and every allegation set forth in Paragraphs 1 through 35, inclusive, of this Complaint as though set forth in full herein.

37.    From about October 2010 through about June 2011, BAKSHI and WLODARCZYK made multiple representations to CHEIKES, as an individual and as the representative agent for TSGE, regarding a proposed financing arrangement.  Among the representations, BAKSHI represented that the SBLC would be cash-backed by another party (Sabastian Anthonysamy) with whom BAKSHI represented as having a substantial ongoing financial relationship with a major banking institution (HSBC UK Bank).

38.    BAKSHI further represented that the SBLC would be issued by HSBC to NACC, which BAKSHI represented held, at that time, several existing substantial lines of credit with HSBC.  BAKSHI represented that upon the issuance of the SBLC, NACC would immediately draw down on one of its then existing lines of credit and distribute monies back to Plaintiffs in the form of a non-recourse loan in consideration for the initial monies put into escrow.  The entire transaction was to take no more than three weeks to complete.

39.    WLODARCZYK represented himself to be a principal in the transaction and also represented that he had previously successfully completed several of these transactions with other investors and that the issuance by HSBC of the SBLC, cash-backed by Mr. Anthonysamy, was assured.

40.    Representations were also made that BAKSHI and WLODARCZYK had substantial business dealings with CES on similarly described transactions and that all said transactions had been successfully handled without any problems.  BAKSHI and/or

NEWMEYER & DILLION LLP

1    WLODARCZYK also represented that the escrow company would hold the escrowed monies

2    until the SBLC was issued.

3        41.    BAKSHI and WLODARCZYK also each executed personal and corporate

4    guarantees, on behalf of FBE and CFR, respectively, for the full refund of the monies placed into

5    escrow in the event that, for any reason, the SBLC was not issued.

6        42.    Relying on the above representations, final agreements to memorialize the

7    proposed financial transaction were negotiated by and between Plaintiffs, on the one hand, and

8    BAKSHI and WLODARCZYK, on the other hand.

9        43.    Plaintiffs relied on Defendants' representations and guarantees to enter into the

10    agreement and utilize CES as the escrow agent for the escrowed monies.

11        44.    At the time Defendants made the above statements to Plaintiffs, Defendants knew

12    the statements to be untrue.

13        45.    Those statements were made by Defendants with the intent to induce Plaintiffs to

14    transfer funds into the CES escrow so that Defendants could then convert those funds for ulterior

15    purposes.

16        46.    Plaintiffs, at the time the statements were made and at the time it transferred

17    €300,000 into the CES escrow, were ignorant of their falsity and could not, in the exercise of

18    reasonable diligence, have discovered Defendants' secret intentions.

19        47.    Had Plaintiffs known of Defendants' actual intentions, they would not have

20    transferred €300,000 into the CES escrow.

21        48.    As a proximate result of Defendants' fraudulent conduct, Plaintiffs lost the

22    €300,000 and have expended considerable time and resources in an effort to recover the lost

23    monies, by reason of which Plaintiffs have been damaged in an amount that can be proven at trial,

24    but which is in any event not less than $500,000.

25        49.    Defendants' aforementioned conduct was intentional, willful and malicious and

26    was despicable conduct that subjected Plaintiffs to cruel and unjust hardship in conscious

27    disregard of its rights, so as to justify an award of exemplary and punitive damages.

28    ///

3587966.1                                    - 8 -

### FOURTH CAUSE OF ACTION

### Negligence

(Against all Defendants and DOES 16 through 20, inclusive)

50.     Plaintiffs repeat, reallege and incorporate by this reference each and every allegation set forth in Paragraphs 1 through 49, inclusive, of this Complaint as though set forth in full herein.

51.     On or about March 1, 2011, in accordance with the terms of the agreements between the parties, Plaintiffs wire transferred €300,000 to CES to be held in escrow.

52.     Defendants were principals in the agreement and were obligated to, among other things, ensure that the SBLC was issued before the escrowed monies were released.

53.     Defendants negligently managed the transaction, failing to ensure that the SBLC issued before the €300,000 escrowed with CES was released.

54.     Plaintiffs are informed and believe and on that basis allege that Defendants were further negligent in not failing to properly inform Plaintiffs regarding the status of the escrowed monies and the status of the SBLC.

55.     As a direct and legal result of Defendants' negligence, Plaintiffs were damaged in an amount that can be proven at trial but that is in any event not less than $410,000.

WHEREFORE, Plaintiffs prays judgment against Defendants, and each of them, as follows:

1.     For actual damages in an amount that can be proven at trial, but that in any event is not less than $500,000;

2.     For interest on this sum at the prevailing legal rate from March 1, 2011;

3.     For exemplary and punitive damages;

4.     For costs of the suit incurred herein;

5.     For reasonable attorney's fees; and

6.     For such other and further relief as the court may deem proper.

///

///

1

**DEMAND FOR JURY TRIAL**

2

Plaintiffs demand a trial by jury for all causes of action.

3    DATED: March 14, 2013                    NEWMEYER & DILLION LLP

4

5                                             By: _____

6                                             J. Nathan Owens
                                              Attorneys for Plaintiffs
7                                             THE STORYTELLERS GROUP
                                              ENTERPRISES CO. and STEPHEN
8                                             CHEIKES

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3587966.1                        - 10 -

COMPLAINT

# AGREEMENT

## TO

### FACILITATE LOAN TRANSACTION

*THIS AGREEMENT dated as at March 11, 2011, is by and between SHAMAN BAKSHI ("Bakshi"), Bakshi's solely owned corporation FADE TO BLACK ENTERTAINMENT, LLC ("FTB"), STEPHEN CHEIKES ("Cheikes"), and CLIVE ASHWORTH ("Ashworth").*

*WHEREAS, Cheikes and Ashworth have provided funds in the amount of Three Hundred Thousand Euros (300,000 Euros) as directed by Bakshi and FTB for the purpose of facilitating a loan transaction by and between HSBC UK Bank ("Bank") and NORTH AMERICAN CONVEYOR COMPANY ("NACC") pursuant to which Bank will lend to NACC not less than Twenty Million Euros (20,000,000 Euros) ("Loan") not later than March 25, 2011 ("Loan Date");*

*NOW, THEREFORE, for good and valuable consideration, receipt of which is acknowledged by all parties hereto, the parties hereto hereby agree as follows:*

1. **REPRESENTATIONS AND WARRANTIES:** *Bakshi and FTB hereby represent and warrant that:*

   a. *NACC shall lend Twenty Million Euros (20,000,000 Euros) of the Loan to FTB ("FTB Loan") not later than the Loan Date. The FTB Loan shall be made by NACC on a non-recourse, non-callable basis, and shall be forgiven by NACC on a date which is one (1) year and one (1) day from the date of cash transfer of the FTB Loan proceeds to FTB, and shall not be repayable/ returnable in whole or part by FTB.*

   b. *NACC shall direct Bank, in and as part of all appropriate Loan documents, to directly wire transfer the FTB Loan directly to an appropriate escrow account ("Escrow Account"), currently identified as Escrow No: 39-6279-AH, with Commercial Escrow Services, Inc., c/o Toni Hardstone. The full amount of the FTB Loan shall pass directly from Bank to the Escrow Account not later than the Loan Date.*

   c. *Cheikes and Ashworth shall be provided with all documents reasonably related to the Loan and FTB Loan, including without limitation all documents related to the SBLC which provides collateral for the Loan ("SBLC"), and all documents related to the Loan between Bank and NACC, immediately upon execution thereof by the appropriate parties.*

2. **DISTRIBUTION OF FTB LOAN PROCEEDS:** *Bakshi and FTB shall immediately do everything reasonably required to ensure that the FTB Loan*



*shall be distributed by Commercial Escrow Services, Inc., immediately upon receipt thereof, as follows and in the listed priority:*

    a.  *An amount contractually committed, outstanding, and due to the provider of the SBLC, not to exceed Six Million Euros (6,000,000 Euros). Bakshi and FTB agree and acknowledge that the total contractual amount due and payable to the provider from Commercial Escrow Services, Inc. will be offset and reduced by the full 300,000 Euros provided by Cheikes and Ashworth to facilitate the Loan; and*

    b.  *An amount contractually due to the party which monetizes the Loan, equal to Two Million Euros (2,000,000 Euros); and*

    c.  *Three Hundred Thousand Euros (300,000 Euros) to Ashworth, per wiring instructions to be supplied directly by Ashworth to Commercial Escrow Services, Inc.; and*

    d.  *All remaining FTB Loan proceeds ("Net Proceeds") shall be distributed:*

        i.  *An amount equal to Thirty-Seven and One-Half Percent (37.5 %) of Net Proceeds to Ashworth, per wiring instructions to be supplied directly by Ashworth to Commercial Escrow Services, Inc.; and*

        ii.  *An amount equal to Thirty-Seven and One-Half Percent (37.5%) of Net Proceeds  to Cheikes, per wiring instructions to be supplied directly by Cheikes to Commercial Escrow Services, Inc.; and*

        iii.  *An amount equal to Twenty-Five Percent (25%) of Net Proceeds to Bakshi, per wiring instruction to be supplied directly by Bakshi to Commercial Escrow Services, Inc.*

3.  *NATURE OF DISTRIBUTIONS OF FTB LOAN PROCEEDS: Distributions of FTB Loan proceeds, as set forth in Paragraph 2. above, shall be of the following legal character, form, and nature:*

    a.  *Distributions to Ashworth pursuant to Paragraph 2(c) above shall constitute a return of capital or loan, as solely determined by Ashworth.*

    b.  *Distributions to Cheikes and Ashworth pursuant to Paragraph 2(d) above shall be of the character, form, and nature of a non-recourse, non-callable loan from FTB to the recipient of the Loan proceeds, which loan shall be forgiven automatically, with or without notice, without repayment of any amount, kind, or nature, on a date which shall be one (1) year and one (1) day from the Loan Date. At no time shall Cheikes and/or Ashworth be subject to any claim for return or reimbursement of any monies received by either party pursuant to Paragraph 2 above.*

4.  *BAKSHI AND FTB GUARANTEE: Bakshi and FTB, jointly and severally, guarantee and insure, and will defend Cheikes and Ashworth from and against any and all claims, losses, costs, fees, expenses, and/or liability, including legal costs, fees, and expenses, claimed or proven, arising from the heretofore completed provision by Cheikes and Ashworth of the 300,000 Euros as directed*

*by Bakshi and FTB for the purpose of facilitating the Loan transaction intended by and between Bank and NACC, and from the receipt, acceptance, and retention by Cheikes and/or Ashworth, on the terms provided in this agreement, of Loan proceeds as set forth in Paragraphs 2 and 3 above. Any such claim and/or loss will be defended/reimbursed in full by Bakshi/FTB within five (5) business days of demand therefor by Cheikes and/or Ashworth*

5. **SUPERSEDENCE OF THIS AGREEMENT: This agreement shall replace and supersede any and all prior agreements of the parties hereto, but only to the extent that the terms contained herein contradict or reasonably overrule the terms of any such prior agreement. Except as so provided, this agreement shall set forth the entire agreement of the parties with respect to the subject matter contained herein, and shall not be modified, except in writing signed by the party to be charged.**

*AGREED TO AND ACCEPTED BY:*

**SHAMAN BAKSHI**

**FADE TO BLACK ENTERTAINMENT, LLC ("FTB")**
**By: Shaman Bakshi, President**

**CLIVE ASHWORTH**

**STEPHEN CHEIKES**

**COMMERCIAL ESCROW SERVICES, INC.**
**BY: TONI HARDSTONE, Escrow Officer**



March 1, 2011

RE: Personal Guarantee, 50,000,000 HSBC SBLC Funding Transaction

To: Stephen Cheikes
    The Storytellers Group Enterprises Company


Mr. Cheikes,

This letter will serve as a Personal and Corporate Guarantee for the 300,000 Euro issuance fee that you have deposited with Commercial Escrow Services, Inc. under Escrow# 39-6279-AH. Once these funds are released to the Provider, Mr. Sabastian Anthonysamy, we fully guarantee their performance or a refund, if performance is not completed. Their duty to perform, outlined by the fully executed SBLC Issuance Agreement, is to issue a $50,000,000 SBLC from HSBC UK, with the Lender, North American Conveyor Company, as the Beneficiary of the Instrument. If these duties are not performed, we Creative Financial Resources, LLC and myself Personally, Richard Charles Wlodarczyk III, due hereby guarantee the 300,000 Euros issuance fee that you are releasing to the Provider Mr. Sabastian Anthonysamy. Please acknowledge receipt of this guarantee. Thank you!

Respectfully,

Rik Wlodarczyk
Managing Member
Creative Financial Resources, LLC


7770 Regents Rd., Suite 113553
San Diego, CA 92122




# SUMMONS
## *(CITACION JUDICIAL)*

**SUM-100**

**NOTICE TO DEFENDANT:** SHAMAN BAKSHI, an individual;
*(AVISO AL DEMANDADO):* FADE TO BLACK ENTERTAINMENT, LLC,
a California limited liability company; RIK
WLODARCZYK, an individual; CREATIVE FINANCIAL
RESOURCES LLC, a California limited liability
company; and DOES 1 through 20, inclusive;

**YOU ARE BEING SUED BY PLAINTIFF:** THE STORYTELLERS GROUP
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* ENTERPRISES CO., a
Canadian corporation; and STEPHEN CHEIKES, an
individual;

---

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**03/15/2013** at 02:22:58 PM
Clerk of the Superior Court
By Michael Porter, Deputy Clerk

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Orange County Superior Court
700 Civic Center Drive West

Judge William M. Monroe

| 30-2013-00637770-CU-BC-CJC |

Santa Ana, CA 92701

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
J. Nathan Owens, CBN 198546
Newmeyer & Dillion LLP
895 Dove Street
Newport Beach, CA 92660

ALAN CARLSON, Clerk of the Court

949/854-7099

DATE:      03/15/2013
*(Fecha)*

Clerk, by _____ , Deputy
*(Secretario)*                                    *(Adjunto)*

Michael Porter

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under:  ☐ CCP 416.10 (corporation)           ☐ CCP 416.60 (minor)
        ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
        ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
        ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Legal
Solutions
⊕ Plus

Code of Civil Procedure §§ 412.20, 465

# Exhibit B

1   NEWMEYER & DILLION LLP
    J. NATHAN OWENS, CBN 198546
2   Nathan.owens@ndlf.com
    895 Dove Street, 5th Floor
3   Newport Beach, California  92660
    (949) 854-7000; (949) 854-7099 (Fax)
4
    Attorneys for Plaintiffs
5   THE STORYTELLERS GROUP ENTERPRISES
    CO. and STEPHEN CHEIKES
6

7

8                     SUPERIOR COURT OF CALIFORNIA

9                          COUNTY OF ORANGE

10

| 11 | THE STORYTELLERS GROUP | CASE NO.:   30-2013-00637770-CU-BC-CJC |
| --- | --- | --- |
| 12 | ENTERPRISES CO., a Canadian corporation; and | DEPT:          C18 |
| 13 | STEPHEN CHEIKES, an individual; | JUDGE:       William Claster |
| 14 | Plaintiffs, | **STIPULATION FOR JUDGMENT AGAINST RIK WLODARCZYK AND CREATIVE FINANCIAL RESOURCES, LLC** |
| 15 | vs. | File Date:     March 15, 2013 |
| 16 | SHAMAN BAKSHI, an individual; FADE TO BLACK ENTERTAINMENT, | Trial Date:   None Set |
| 17 | LLC, a California limited liability company; | |
| 18 | RIK WLODARCZYK, an individual; CREATIVE FINANCIAL RESOURCES, | |
| 19 | LLC, a California limited liability company; and | |
| 20 | DOES 1 through 20, inclusive; | |
| 21 | Defendants. | |

22          This Stipulated Judgment results from a settlement of breach of contract (guarantee),

23   conversion and fraud claims filed by plaintiffs The Storytellers Group Enterprises Co. and

24   Stephen Cheikes (collectively, "Plaintiffs") against the defendants Rik Wlodarczyk and Creative

25   Financial Resources, LLC, (collectively "Defendants") (the "Action").

26          Plaintiffs and Defendants (collectively the "Parties") stipulate and agree to the following

27   facts: As part of the inducement for Plaintiffs to participate in the Defendants' Financial

28   Transaction, the Defendants executed written personal and corporate guarantees to repay

4820253.1

STIPULATION FOR JUDGMENT AGAINST RIK WLODARZYK AND CREATIVE FINANCIAL RESOURCES

1    Plaintiffs any portion that was lost of the €300,000 placed by Plaintiffs into the Defendants'

2    proposed financial transaction.  Plaintiffs performed all conditions, covenants and promises

3    required under the agreement between the Parties and both the personal and corporate guarantees,

4    including placement of the €300,000 into the designated escrow.  The Financial Transaction

5    failed and Plaintiffs demanded return of the monies placed into escrow.  Defendants have failed

6    to repay any portion of the €300,000.

7        To resolve the Action, and subject to a formal settlement agreement executed by Plaintiffs

8    and Defendants, IT IS HEREBY STIPULATED by and between Plaintiffs and Defendants as

9    follows:

10        Defendants acknowledge executing the personal and corporate guarantees and that they

11    have no defense to enforcement of the guarantees.  At the time the €300,000 was placed into

12    escrow, the currency exchange in US dollars was $430,000.  Plaintiffs have incurred an additional

13    $95,000 pursuing recovery of the monies placed into escrow.  Pursuant to the guarantees,

14    Plaintiffs are entitled to recover $525,000 as against any of the defendants in this action.

15        Plaintiffs and Defendant STIPULATE AND AGREE that judgment shall be entered in

16    favor of Plaintiffs and against Defendant for the sum of $450,000.  However, this amount shall be

17    reduced by any payments made pursuant to the settlement agreement by Defendant.

18        This Stipulated Judgment in the amount of four hundred fifty thousand even ($450,000) in

19    favor of Plaintiffs and against Defendants is meant to secure Defendants' performance under a

20    Settlement Agreement relating to this Action whereby Defendants are to pay Plaintiffs a

21    settlement payment totaling $200,000 ("Settlement Payment").  The Settlement Payment shall be

22    paid to Plaintiffs via certified funds payable to the Newmeyer & Dillion, LLP Client Trust

23    Account and delivered to Newmeyer & Dillion, LLP, c/o Nathan Owens, 895 Dove Street, 5th

24    Floor, Newport Beach, CA 92669 on or before October 14, 2014. (Hereinafter "Settlement

25    Payment Plan").

26        IT IS FURTHER STIPULATED that Mr. Wlodarczyk is personally liable to pay the

27    Settlement Payment to Plaintiffs under the Settlement Payment Plan regardless of whether

28    Creative Financial Resources, LLC makes payment, remains solvent or files for bankruptcy

4820253.1                                  - 2 -

STIPULATION FOR JUDGMENT AGAINST RIK WLODARZYK AND CREATIVE FINANCIAL RESOURCES

NEWMEYER & DILLION LLP

Newmeyer & Dillion LLP

1   protection.

2          IT IS FURTHER STIPULATED that if (a) Mr. Wlodarczyk fails to timely make any of

3   the payments under the Settlement Payment Plan; and (b) Mr. Wlodarczyk fails to timely cure

4   any default within 10 days of Plaintiff or its counsel's facsimile and e-mail transmission of a

5   Notice of Default and Notice to Cure to Mr. Wlodarczyk, the Parties agree that Plaintiff will

6   apply on an *ex parte* basis to the Court for entry of this Stipulated Judgment minus any offsets for

7   payments made.  Mr. Wlodarczyk agrees that Notice of Default and Notice to Cure, as well as

8   notice of any *ex parte* application will be completed by sending notice to Mr. Wlodarczyk at 206-

9   724-9660 and at rik@creativefinancialresources.com.  Any notices herein shall be provided by

10  phone and email, and shall be deemed effective upon transmission.

11         IT IS FURTHER STIPULATED that, should Mr. Wlodarczyk's phone number and/or the

12  e-mail address listed above change, Mr. Wlodarczyk is obligated to notify Plaintiffs' counsel in

13  writing of such change within 10 calendar days of such change at 949-854-7000 and at

14  nathan.owens@ndlf.com.  Mr. Wlodarczyk's failure to do so will result in the Notice of

15  Default/Notice to Cure and *ex parte* notice provisions above being fully satisfied upon a phone

16  call and e-mail transmission of a notice to Mr. Wlodarczyk at 206-724-9660 and at

17  rik@creativefinancialresources.com.

18         IT IS FURTHER STIPULATED that Defendants expressly waive notice of entry of

19  judgment, any appeal of the Stipulated Judgment, and right to set aside the Stipulated Judgment.

20  This Stipulated Judgment is part of a written settlement agreement, pursuant to which the court

21  retains jurisdiction under California Code of Civil Procedure section 664.6.  The Parties request

22  and agree that the court retain jurisdiction over them to enforce this Stipulated Judgment, the

23  settlement agreement, and the settlement until the settlement agreement's terms have been

24  performed in full.

25         IT IS FURTHER STIPULATED that this Stipulated Judgment is a compromise on the

26  breach of contract (guarantee), conversion and fraud claims filed by Plaintiffs and it is expressly

27  agreed by the Defendants that this Stipulated Judgment is not dischargeable pursuant to 11 U.S.

28  Code § 523 should either of the Defendants file for bankruptcy protection under any section of

STIPULATION FOR JUDGMENT AGAINST RIK WLODARZYK AND CREATIVE FINANCIAL RESOURCES

Newmeyer & Dillion LLP

1  Title 11 of the United States Codes.

2     IT IS FURTHER STIPULATED that counsel for Plaintiffs shall hold this Stipulated

3  Judgment and shall not cause execution to issue against Defendants unless and until an event of

4  default occurs under the terms of the settlement agreement, which is not cured within the

5  respective time-frame.

6     IT IS FURTHER STIPULATED that a photocopy, electronic copy, and/or facsimile copy

7  of the Stipulated Judgment has the same force and effect as the original. This Stipulated Judgment

8  may be executed in counterparts, such that when the executed signature pages are taken together

9  they shall constitute the entire Stipulated Judgment.

10    IT IS FURTHER STIPULATED that Plaintiffs can freely assign their rights and

11  ownership in the Stipulated Judgment.

12    IT IS FURTHER STIPULATED that, if any provision or any part of any provision of this

13  Stipulated Judgment is for any reason held to be invalid, unenforceable, or contrary to any public

14  policy, law, statute and/or ordinance, then the remainder of this Stipulated Judgment shall not be

15  affected thereby and shall remain valid and fully enforceable.

16    **IT IS SO STIPULATED.**

17  DATED:_____, 2014        THE STORYTELLERS GROUP
18                                      ENTERPRISES CO.

19                                      By: _____

20                                      Title:_____

21  DATED:_____, 2014        STEPHEN CHEIKES

22

23  DATED:_____, 2014        RIK WLODARCZYK

24                                      _____

25  DATED:_____, 2014        CREATIVE FINANCIAL RESOURCES, LLC

26

27                                      By_____

28                                      Title:_____

4820253.1                               - 4 -

STIPULATION FOR JUDGMENT AGAINST RIK WLODARZYK AND CREATIVE FINANCIAL RESOURCES

**SETTLEMENT AGREEMENT, RELEASE AND COVENANT NOT TO SUE**

## 1. INTRODUCTION

This Settlement Agreement, Mutual Release and Covenant Not to Sue ("AGREEMENT") is made and entered into as of this 19th day of September 2014 between plaintiffs The Storytellers Group Enterprises Co. and Stephen Cheikes (collectively, "PLAINTIFFS"), on the one hand, and the defendants Rik Wlodarczyk and Creative Financial Resources, LLC, (collectively "WLODARCZYK"), on the other.

## 2. DEFINITIONS

The following definitions shall apply in this AGREEMENT:

2.1    "ACTION" shall mean and refer to the legal action pending in Orange County entitled, *The Storytellers Group Enterprises, et al. v. Shaman Bakshi, et al.*, Case Number 30-2013-00637770-CU-BC-CJC.

2.2    "PARTIES" shall mean and refer to both PLAINTIFFS and WLODARCZYK as defined hereinabove.

## 3. RECITALS

3.1    WHEREAS, Defendants, including WLODARCZYK, solicited PLAINTIFFS to participate in a financing opportunity that involved the issuance of a Standby Letter of Credit ("SBLC") ("FINANCING TRANSACTION"). As part of the FINANCING TRANSACTION, PLAINTIFFS placed €300,000 into escrow to be held until the SBLC was issued. The SBLC was never issued but the €300,000 placed into escrow was released, of which €100,000 was received by Creative Financial Resources, LLC.

3.2    WHEREAS, PLAINTIFFS thereafter pursued WLODARCZYK, the other Defendants and other individuals involved in the FINANCING TRANSACTION for return of the €300,000 improperly released from escrow. PLAINTIFFS have not recovered any portion of the €300,000 and have spent additional monies attempting to recover the €300,000.

3.3    WHEREAS, PLAINTIFFS filed the ACTION to enforce personal and corporate guarantees executed by the Defendants, including WLODARCZYK, in favor of PLAINTIFFS, for return of the escrowed monies and any monies spent to recover the escrowed monies.

NOW, THEREFORE, in consideration of the mutual covenants, agreements, representations and warranties contained in this AGREEMENT and the Stipulation for Judgment incorporated herein, the PARTIES agree as follows:

4820237.1

///

## 4.  SETTLEMENT TERMS

4.1    WLODARCZYK shall make payments as set forth in the executed Stipulation of Judgment attached hereto as Exhibit A and incorporated herein by reference.

4.2    The payments called for in the Stipulation of Judgment shall be made by check payable to "Newmeyer & Dillion, LLP Client Trust Account" (Tax Identification Number 33-0051418) and delivered to:

Newmeyer & Dillion, LLP
c/o Nathan Owens
895 Dove Street, 5th Floor
Newport Beach, CA 92660

4.3    All PARTIES hereto agree and stipulate that the settlement and associated payments were made in good faith in accord with Code of Civil Procedure section 877 and 877.6.

## 5.  RELEASES

5.1    <u>Release</u>.  For and in consideration of the Stipulation of Judgment, the payments described therein, and the other representations and promises contained herein and in the Stipulation for Judgment, PLAINTIFFS do hereby fully and finally settle, release, acquit and forever discharge, in the broadest possible manner WLODARCZYK. Conditioned upon fulfillment of the promises made herein and in the Stipulation of Judgment, this AGREEMENT may be pled as a full and complete defense to any action or other proceeding by which any party pursues any of the claims released herein, as well as a basis for abatement of, or injunction against, such action or other proceeding. Notwithstanding any other provision of this AGREEMENT, this release specifically does not include any claims for bodily and/or personal injury.

5.2    <u>Waiver of Civil Code Section 1542</u>.  PLAINTIFF acknowledges and understands that there is a risk that, subsequent to the execution of this AGREEMENT, they may accrue, obtain, incur, suffer or sustain claims which in some conceivable way arise out of, are caused by, are connected with or relate to the FINANCING TRANSACTION, and that such claims may be unknown and unanticipated at the time of this AGREEMENT is signed, or are not presently capable of being ascertained. PLAINTIFFS further acknowledge that there is a risk that any claims as are known or should be known may become more serious than they now expect or anticipate. Nevertheless, PLAINTIFFS hereby expressly waive all rights they may have in such unknown or unexpected consequences or results.  PLAINTIFFS acknowledge that they have had the benefit of or opportunity to consult with counsel, understand the import of Civil Code section 1542, and expressly waive the protection of Civil Code section 1542, which provides as follows:

4820237.1

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which, if known by him or her must have materially affected his or her settlement with the debtor.

PLAINTIFFS hereby specifically waive any and all rights and benefits that could accrue under this section or any successor statute. The PARTIES acknowledge that this AGREEMENT would not be made without such a waiver.

## 6. LIMITATIONS OF AGREEMENT

6.1     Notwithstanding any other provision of this AGREEMENT, PLAINTIFFS do not waive or release any rights, claims or remedies, whether legal, equitable, or otherwise, as against any other Defendants in the ACTION or other third parties for any claims arising out of or related to the FINANCIAL TRANSACTION.

## 7. ENFORCEMENT

7.1     The PARTIES hereby acknowledge, agree and stipulate that each has the right to enforce any provision of this AGREEMENT by filing any appropriate action, proceeding, or motion, including without limitation, a motion pursuant to California Code of Civil Procedure sections 664.6 and 664.7, in the appropriate law and motion department of the Orange County Superior Court, where the ACTION is venued, or in the appropriate law and motion department where any subsequent action is venued. The PARTIES further acknowledge, agree and stipulate that the Court in the ACTION shall retain jurisdiction over the PARTIES to reopen the ACTION after it is dismissed and to hear any motion brought pursuant to sections 664.6 or 664.7.

7.2     In the event that legal action, arbitration or any other proceeding (legal, equitable, administrative or otherwise) is instituted by any of the PARTIES or their RELATED PERSONS AND ENTITIES to enforce or interpret the provisions of this AGREEMENT, the prevailing party shall be entitled to recover reasonable costs and expenses, including reasonable attorneys' fees, from the non-prevailing party.

## 8. MISCELLANEOUS PROVISIONS

8.1     This AGREEMENT is a result of a compromise among the PARTIES of disputed claims of breach of contract, conversion and fraud.

8.2     Except as otherwise provided in this AGREEMENT, the PARTIES acknowledge and agree that each of them, as between them, will bear their own costs, expenses, and attorneys' fees arising out of and/or connected with the ACTION and/or the negotiation, drafting and execution of this AGREEMENT, and all matters arising out of or connected therewith.

8.3     This AGREEMENT is the product of negotiation and preparation by and among the PARTIES.  Neither this AGREEMENT nor any provision thereof shall be deemed prepared or drafted by one party or another, or its attorneys, and shall not be construed more strongly against any party.

8.4     This AGREEMENT shall be interpreted in accordance with and governed in all respects by the laws of the State of California.

8.5     If any provision or any part of any provision of this AGREEMENT is for any reason held to be invalid, unenforceable or contrary to any public policy, law, statute and/or ordinance, then the remainder of this AGREEMENT shall not be affected thereby and shall remain valid and fully enforceable.

8.6     This AGREEMENT may be executed in counterparts, and all so executed shall constitute an agreement which shall be binding upon all PARTIES hereto, notwithstanding that the signatures of all PARTIES' designated representatives do not appear on the same page.  True copies or facsimile signatures shall be considered as effective as original signatures.

8.7     The PARTIES to this AGREEMENT shall execute and deliver any document which is reasonably necessary to achieve the goals and purposes of this AGREEMENT.

8.8     In any action or proceeding relating to this AGREEMENT, the PARTIES stipulate that a copy of this AGREEMENT may be admissible to the same extent as the original AGREEMENT unless the exceptions set forth in California Evidence Code section 1511 are found to be applicable.

8.9     The AGREEMENT, including all exhibits attached hereto, constitutes the entire understanding between and among the PARTIES with regard to the matters herein set forth.  There are no representations, warranties, agreements, arrangements, undertakings, oral or written, between or among the parties hereto relating to the subject matter of this AGREEMENT which are not fully expressed herein.  This AGREEMENT shall be interpreted according to its own terms, as defined in this AGREEMENT or otherwise according to their ordinary meaning, without any parol evidence.  This is an integrated agreement.

DATED: _____, 2014     THE STORYTELLERS GROUP
                                         ENTERPRISES CO.


                                         By: _____

                                         Title:_____

4820237.1

DATED: _____, 2014    STEPHEN CHEIKES

 

DATED: _____, 2014    RIK WLODARCZYK

DATED: _____, 2014    CREATIVE FINANCIAL RESOURCES, LLC

By: _____

Title: _____

4820237.1

EXHIBIT "A"